GORDON GREENBERG, SBN 116774
ggreenberg@mwe.com
BRANDON ROKER, SBN 205292
broker@mwe.com
TALA JAYADEVAN, SBN 288121
tjayadevan@mwe.com
BRENNEN SHARP, SBN 353363
bsharp-polos@mwe.com
2049 Century Park East
Suite 3200
Los Angeles, CA 90067
Telephone: 213.229.7000
Facsimile: 213.229.7520

JON DEAN, SBN 184972
jon.dean@sidley.com
350 S. Grand Avenue
Los Angeles, CA 90071
Telephone: 213.896.6036

*Attorneys for Defendant*
*William J. Amon*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:24-CR-00295-RGK |
|---|---|
| Plaintiff, | **JOINDER TO DEFENDANT ANDREW A. WIEDERHORN'S MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY** |
| V. | |
| ANDREW A. WIEDERHORN, WILLIAM J. AMON, REBECCA D. HERSHINGER, and FAT BRANDS INC., | **Trial:** October 28, 2025<br>**Hearing Date:** May 12, 2025<br>**Hearing Time:** 10:00 a.m.<br>**Dept:** Courtroom 850, 8th Floor<br>**Judge:** Honorable R. Gary Klausner |
| Defendants. | |

Evidence and argument relating to more than 20-year-old loans should not be admissible at trial (or, here, at what would inevitably be a "trial within a trial") as such evidence is far too remote and irrelevant to the allegations in this case, particularly as to Defendant William Amon. Indeed, as explained below, despite multiple efforts spanning many months, the Government has failed to provide any adequate explanation regarding how these loans relate to its case against Mr. Amon. Nevertheless, because the Government continues to represent that it will seek to introduce such evidence at trial, the exculpatory materials related to these loans must be timely produced. Accordingly, Defendant William Amon hereby joins in Defendant Andrew A. Wiederhorn's Motion to Compel the Production of Outstanding Discovery (the "Motion"), and in the arguments raised therein. *See* ECF No. 118.

## I. RELEVANT BACKGROUND

The lack of any connection between Mr. Amon and the more than 20-year-old loans is laid bare by the context. Mr. Wiederhorn and Fog Cutter Capital Group Inc. ("Fog Cutter") did not become clients of Andersen Tax until 2016.[1] Mr. Amon did not begin working with Mr. Wiederhorn and his companies until 2017, after the departure for another job by the relationship partner at Andersen Tax who onboarded Mr. Wiederhorn and Fog Cutter. The only charges against Mr. Amon in the Indictment are counts eight through eleven, which charge Mr. Amon with aiding and abetting Mr. Wiederhorn's filing of false tax returns in connection with his personal taxes for the calendar years 2017 through 2020.

Since early December 2024, counsel for Mr. Amon have been attempting to obtain clarification regarding the Government's basis for introducing, at a joint trial, evidence of more than 20-year-old loans and loan forgiveness at the Wilshire companies (the "Wilshire Loans") in which Mr. Amon inarguably had no involvement and for which the Government has produced extremely limited and incomplete information. *See*

---

[1] Andersen Tax is a different firm than Arthur Andersen, the firm that analyzed the 1990s loans referenced in the Indictment and the Motion.

Declaration of Brandon Roker, ¶ 2 and Exhibit 1, thereto. Mr. Amon's counsel made clear that understanding the Government's theory, and the evidentiary basis for it, is of critical importance in preparing pretrial motions, including a potential motion for severance. *Id.*

In response to counsel's initial query as to the basis for introducing in a joint trial evidence of the Wilshire Loans, the Government simply regurgitated the grounds set forth in Fed. R. Evid. 404(b): "motive, opportunity, intent, plan, knowledge," etc. *Id.* at ¶ 3 and Exhibit 2, thereto. Mr. Amon's counsel subsequently followed up multiple times requesting clarification and asking what current evidence the Government had regarding whether Mr. Amon was involved in or even aware of the Wilshire Loans. *Id.* In requesting this information, counsel explained that:

> Specifying the evidence and the Government's theory for introduction of this evidence is required under established Ninth Circuit caselaw and under FRE 404(b). *See* Fed. R. Evid. 404(b)(3) Committee Notes ("Advance notice of Rule 404(b) evidence is important so that the parties and the court have adequate opportunity to assess the evidence, the purpose for which it is offered, and whether the requirements of Rule 403 have been satisfied-- even in cases in which a final determination as to the admissibility of the evidence must await trial."); *see also United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013) (to show relevance, "the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.") (quoting *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994)). Significantly, the 2020 amendments to FRE 404(b) were made "principally to impose additional notice requirements on the prosecution in a criminal case."

*Id.* As emphasized by counsel, the Government may not "play hide and seek" and tell Mr. Amon's counsel to pore through millions of pages of discovery[2] in order to guess what specific foundation or bases the Government may claim demonstrate that Mr. Amon had knowledge of the Wilshire Loans.

After multiple follow up emails requesting the identification of evidence on which the Government is relying, however, the Government only recently responded by stating

---

[2] As explained in the Motion, these millions of pages of materials produced to date by the Government do not include the substantial missing exculpatory evidence related to the Wilshire Loans.

2                                                                2:24-CR-00295-RGK
JOINDER TO DEFENDANT WIEDERHORN'S MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY

that "there are certainly documents produced to you that we believe put Mr. Amon on ample notice of the Wilshire scheme" and asked, despite the explicit authority already provided by counsel, "[i]f you have authority for your implicit belief that we need to identify those produced documents to you please send our way . . .." *Id*. Respectfully, both ignoring the specific authority already identified by counsel and effectively telling counsel to dig through the millions of pages is precisely the type of "hide and seek" gamesmanship rejected by the Ninth Circuit. The harm from such tactics is acute given the absence of a continuance and the corresponding need to assess the appropriate bases for severance sooner than later.

## II. JOINDER IN MOTION TO COMPEL

Loans from the 1990s made by a different company under different circumstances are an irrelevant sideshow for all defendants in this case. Even with full transparency from the Government (which we learned from the Motion includes substantial exculpatory evidence which has not been produced), this sideshow will require a trial within a trial and cause unnecessary confusion and prejudice against the defendants. This risk is stark for Mr. Amon, who had no connection whatsoever to the earlier time-period. Indeed, the Indictment does not indicate or allege that Mr. Amon had any knowledge of any loans made by Wilshire to Mr. Wiederhorn, and counsel is aware of no evidence establishing Mr. Amon's awareness of an alleged 20-year-old, noncharged loan and forgiveness scheme.

Since the Wilshire Loans were investigated and rejected for prosecution, Brady and FRCP Rule 16 require discovery surrounding that decision as specified in the Motion to Compel. While the Motion is not an evidentiary motion and Mr. Amon will make his own evidentiary motions when timely, the Government should be required to specify the evidence against Mr. Amon that purportedly supports the introduction of any evidence of the Wilshire Loans in a joint trial that includes Mr. Amon.

| | |
|---|---|
| DATED: April 14, 2025 | Respectfully submitted,<br><br>MCDERMOTT WILL & EMERY LLP<br><br>By: */s/ Gordon Greenberg*<br>    Gordon Greenberg<br>    Tala Jayadevan<br>    Brandon Roker<br>    Brennen Sharp |