BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
KEVIN B. REIDY (Cal. Bar No. 320583)
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorneys
Major Frauds/Transnational Organized Crime Sections
    1100/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-8536/2274
    Facsimile:    (213) 894-0141
    E-mail:       kevin.reidy@usdoj.gov;
                 benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>             v.<br><br>ANDREW A. WIEDERHORN, et al.<br><br>        Defendants. | No. CR 24-00295-RGK<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT WIEDERHORN'S MOTION TO COMPEL THE PRODUCTION OF OUTSTANDING DISCOVERY (DKT. 118) |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kevin B. Reidy and Benedetto L. Balding, hereby files its opposition to defendant Andrew A. Wiederhorn's motion to compel the production of outstanding discovery (Dkt. 118).[1]

//

//

---

    [1] Defendant William J. Amon has joined defendant Wiederhorn's motion. (Dkt. 119.)

The government's opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and any additional evidence or argument that the Court may wish to consider at a hearing on this matter.

Dated: April 18, 2025

Respectfully submitted,

BILAL A. ESSAYLI
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*/s/*

_____
KEVIN B. REIDY
BENEDETTO L. BALDING
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

### TABLE OF CONTENTS

I.    INTRODUCTION......................................................1

II.   FACTUAL BACKGROUND...............................................2

      A.    The 1990s Shareholder Loans Are Relevant to Defendant
            Wiederhorn's Culpable State of Mind in This Case and
            Necessary to Tell a Comprehensive Story at Trial.........2

      B.    Wiederhorn's 1990s Shareholder Loans Were the Subject
            of Criminal and Civil Investigations.....................4

      C.    The Government Has Made Efforts to Locate and Turn
            Over Evidence Related to the 1990s Shareholder Loans
            Investigation............................................6

III.  ARGUMENT.........................................................8

      A.    Legal Standard...........................................8

      B.    Defendants Are Not Entitled to All Government "Notes
            or Internal Correspondence" Regarding Defendant's
            Attorney's Presentations.................................9

      C.    Defendant Is Not Entitled to the IRS-CI Special Agent
            Report Regarding the 1990s Shareholder Loans............11

      D.    The Court Should Not Order Discovery of Any
            Destruction of Decades-Old Materials from Defendant's
            Prior Criminal Case.....................................13

      E.    Defendants' Request to Search for 1990s Shareholder
            Loans Discovery and Produce All Discoverable Material
            Is Moot.................................................15

      F.    Defendants' Request for "Immediate" Production or
            Production within 14 Days of Court's Order Should Be
            Denied as Premature.....................................16

IV.   CONCLUSION......................................................17

1

**TABLE OF AUTHORITIES**

2

**CASES**

3   <u>Akiona v. United States</u>, 938 F.2d 158 (9th Cir. 1991).........13, 14

4   <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)............................passim

5   <u>Doe v. Society of Missionaries of Sacred Heart</u>, 2014 WL 1715376,
6       (N.D. Ill. May 1, 2014).......................................10

7   <u>Giglio v. United States</u>, 405 U.S. 150 (1972).........................9

8   <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947).............................9

9   <u>Lopez v. Ryan</u>, 630 F.3d 1198 (9th Cir. 2011).......................10

10  <u>Pamida, Inc. v. E.S. Originals, Inc.</u>, 281 F.3d 726 (8th Cir.
        2002).........................................................9

11  <u>Smart v. County of Gloucester</u>, 2024 WL 532092 (D.N.J. Feb. 8,
12      2024).........................................................14

13  <u>United States ex rel. Burroughs v. DeNardi Corp.</u>, 167 F.R.D. 680
        (S.D. Cal. 1996)..............................................10

14  <u>United States v. </u>Agurs, 427 U.S. 97 (1976).......................9, 11

15  <u>United States v. Armstrong</u>, 517 U.S. 456, 463 (1996)...............12

16  <u>United States v. Bagley</u>, 473 U.S. 667 (1985).......................9

17  <u>United States v. Balwani</u>, 2022 WL 1720081 (N.D. Cal. May 27,
18      2022).........................................................15

19  <u>United States v. Coppa</u>, 267 F.3d 132, 136 (2d Cir. 2001)...........16

20  <u>United States v. Fernandez</u>, 231 F.3d 1240 (9th Cir. 2000)..........16

21  <u>United States v. Fort</u>, 472 F.3d 1106 (9th Cir. 2007)...............12

22  <u>United States v. Grossman</u>, 843 F.2d, 78 (2d Cir. 1988)............11

23  <u>United States v. Harold</u>, 734 F. Supp. 3d 1102 (D. Or. 2024).......16

24  <u>United States v. Howell</u>, 231 F.3d 615 (9th Cir. 2000).............15

25  <u>United States v. Jefferson</u>, 2025 WL 53338 (W.D. Wash. Jan. 8,
        2025).........................................................15

26  <u>United States v. Mann</u>, 61 F.3d 326 (5th Cir. 1995)................12

27  <u>United States v. Nixon</u>, 418 U.S. 683 (1974)......................16

28  <u>United States v. Romo-Chavez</u>, 681 F.3d 955 (9th Cir. 2012)........13

United States v. Ruiz, 536 U.S. 622 (2002)...........................8

United States v. Sager, 227 F.3d 1138 (9th Cir. 2000)..............15

United States v. Sanmina Corp., 968 F.3d 1107 (9th Cir. 2020).......9

United States v. Weigand, 482 F. Supp. 3d 224 (S.D.N.Y. 2020)......16

United States v. Zemlyansky, 945 F. Supp. 2d 438 (S.D.N.Y. 2013)...16

Vick v. Texas Employment Commission, 514 F.2d 734 (5th Cir. 1975)...........................................................14

Weatherford v. Bursey, 429 U.S. 545 (1977)..........................8

**RULES**

Federal Rule of Criminal Procedure 16.....................9, 11, 12

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3        Defendants Andrew A. Wiederhorn and William J. Amon ask this

4   Court to compel discovery related to defendant Wiederhorn's first

5   shareholder-loan-related fraud from the late 1990s.  Defendants'

6   motion should be denied.  <u>First,</u> defendants' request for all notes or

7   correspondence related to 1990s shareholder loan attorney

8   presentations should be denied because the request seeks opinion work

9   product or purported <u>Brady</u> information already in defendant's

10  possession.  <u>Second</u>, this Court should not order the government to

11  turn over the IRS-CI Special Agent Report related to the 1990s

12  shareholder loan fraud because the report is protected from

13  disclosure by Rule 16 and its inculpatory nature excludes it from the

14  government's <u>Brady</u> obligations.  <u>Third,</u> the Court should not order

15  discovery related to the destruction of 1990s shareholder loan

16  investigation evidence because defendant cannot possibly show bad

17  faith or misconduct based upon the disposition of such evidence years

18  before the government first learned that defendant was engaging in a

19  similar fraud in this case.  <u>Fourth,</u> defendants' request that the

20  government search the files of various agencies and DOJ components

21  for 1990s shareholder loan evidence should be denied as moot because

22  the government has already conducted the requested searches.

23  <u>Finally,</u> defendants' requests for immediate production of discovery

24  or production within two weeks of the Court's order should be denied

25  as premature.

26

27

28

1    **II.    FACTUAL BACKGROUND**

2       **A.    The 1990s Shareholder Loans Are Relevant to Defendant
            Wiederhorn's Culpable State of Mind in This Case and
3           Necessary to Tell a Comprehensive Story at Trial[2]**

4          Evidence of defendant Wiederhorn's first effort to extend

5    himself tens of millions in disguised compensation in the form of

6    shareholder loans tends to show that he made his second effort (the

7    one at the center of this case) with knowledge of the sham loans'

8    illegality, with a lack of intent to repay the loans, and motivated

9    by a desire not to pay income tax.

10         During the 1990s, defendant Wiederhorn caused a company for

11   which he served as CEO, Wilshire Credit Corporation ("WCC"), to issue

12   him approximately $65 million in shareholder loans.  (Dkt. 1 ¶ 29.)

13   As the balance of the shareholder loan swelled, Wiederhorn's tax

14   advisor, C.G., grew concerned that the "shareholder loans were

15   'disguised compensation'" and communicated her concerns to

16   Wiederhorn.  (Reidy Decl., Ex. A at 2.)  C.G. and Wiederhorn

17   discussed her concerns with Wiederhorn's shareholder loans at most of

18   the monthly meetings they had together.  (Id. at 3.)  During those

19   conversations, Wiederhorn told C.G. that he "did not want to pay

20   taxes on the shareholder loans either as distributions or income."

21   (Id.)  But C.G. grew troubled with treating the shareholder loans as

22   loans because of key features of the transactions that revealed they

23   were actually compensation.

24   _____

25        [2] The government will provide a more fulsome discussion of the
     bases for admissibility of the 1990s Shareholder Loans when
26   defendants actually move for their exclusion.  (See Dkt. 118-1 at 3
     ("Mr. Wiederhorn will move to exclude any mention of the 1990s loans
27   at the appropriate time."); Dkt. 119 at 3 ("[T]he Motion is not an
     evidentiary motion and Mr. Amon will make his own evidentiary motions
28   when timely.").)

1    Despite frequently hearing those concerns from C.G. over the
2    course of her engagement, defendant Wiederhorn later caused FAT and
3    FOG to extend him millions in shareholder loans that shared many of
4    the hallmarks of "disguised compensation" that C.G. had communicated
5    to him.  Some examples:

6    • C.G. told Wiederhorn that any shareholder loans that he
7       extended to himself after he claimed to be insolvent would
8       be viewed as "distributions," or income, because "a lender
9       would not continue to lend money to someone after they
10      declared they were insolvent."  (Id. at 2, 4.)  Yet after
11      causing FOG to forgive $24 million in shareholder loans to
12      himself in 2017, Wiederhorn caused FOG to extend him
13      another $16.8 million in shareholder loans between 2017 and
14      December 2019 and did not report it as income.  (See Dkt. 1
15      ¶¶ 71-72.)

16   • C.G. told Wiederhorn that the shareholder loans would be
17      viewed as compensation if he did not pay interest.  (Reidy
18      Decl. Ex. A at 3.)  Yet Wiederhorn did not make any
19      interest payments on the shareholder loans he received from
20      FOG.  (Dkt. 1 ¶ 54.)

21   • C.G. also told Wiederhorn that the shareholder loans would
22      be viewed as disguised compensation if he "had nominally
23      low" salary "and a large amount of shareholder loans."
24      (Reidy Decl. Ex. A at 2-3.)  Yet Wiederhorn flouted C.G.'s
25      advice and candidly admitted to personal lenders that he
26      received "$3m-4m distributions from my company as loans"

27
28

1      annually, well in excess of his approximately $400,000

2      annual salary.  (Dkt. 1 ¶ 62.)

3           Wiederhorn and C.G. had lunch sometime after Wiederhorn had

4      taken FAT public in 2017 but before January 2019, and Wiederhorn

5      raised the subject of shareholder loans once again.  (Reidy Decl. Ex.

6      A at 4.)  In a revealing remark from someone who would later be

7      charged with diverting millions in funds from his publicly traded

8      company to a private holding company to disguise his violations of

9      legal restrictions on such transactions, Wiederhorn told C.G. that he

10     regretted taking FAT public "because [he] wanted to borrow from his

11     company."  (Id.)

12     **B.   Wiederhorn's 1990s Shareholder Loans Were the Subject of
           Criminal and Civil Investigations**

13

14          In the late 1990s and early 2000s, the FBI and the Oregon United

15     States Attorney's Office began investigating Wiederhorn for a variety

16     of unlawful conduct including taking out shareholder loans "without

17     an intent to repay [them] later" in order "to obtain the money

18     without paying taxes."  (Dkt. 118-3 at 3.)  Between 2000 and 2004,

19     Oregon AUSAs communicated extensively with Wiederhorn's lawyers "that

20     the Government was looking into Wiederhorn's shareholder loans."

21     (Id.)  Wiederhorn's lawyers made a presentation to the government in

22     an attempt to dissuade them from bringing charges related to the

23     1990s shareholder loans.  (Id.; see also Reidy Decl. Ex. B.)  Oregon

24     AUSAs advocated for moving forward with tax charges against

25     Wiederhorn related to the 1990s shareholder loans.  (Dkt. 118-13 at

26     4.)  An unnamed official at the Department of Justice reviewed the

27     1990s shareholder loans evidence and, based on the official's

28

1   impressions of the evidence, concluded that those charges "should not

2   be prosecuted." (Dkt. 118-13 at 4.) In 2004, defendant ultimately

3   pleaded guilty to one tax fraud charge and a bribery charge in

4   connection with this investigation and served over a year in federal

5   prison. (Dkt. 1 ¶ 31.)

6        After Wiederhorn's guilty plea, the IRS conducted a civil audit

7   related to Wiederhorn's $67 million in discharged shareholder loans

8   that he disclosed in 2000. (Reidy Decl. Ex. C.) Wiederhorn claimed

9   that he did not have to pay income tax on the $67 million in

10  discharged loans because he was insolvent, or the value of his debts

11  exceeded the value of his assets. (Id. at 1.) Critically, civil IRS

12  personnel were not "able to get the information in the possession of

13  the US Attorney on this taxpayer." (Id.) Civil IRS employees sought

14  information about the loans and Wiederhorn's purported insolvency

15  from Wiederhorn through Information Document Requests, but Wiederhorn

16  stated he did not have key information sought in his possession. For

17  example, Wiederhorn told the IRS that he did not have "any workpapers

18  or comput[at]ions that were prepared to show his insolvency" but was

19  "sure that the preparer, Arthur Anders[e]n,[3] prepared computations."

20  (Id.) Given the limited universe of information available to the IRS

21  civil audit staff, the auditors concluded that "[f]raud can not be

22  proven based upon the records available." (Dkt. 118-5 (emphasis

23  added).)

24

25

26

_____

27      [3] At the time of the audit, Arthur Andersen had ceased
operations in the wake of the Enron scandal. See Hughes v. Huron
28  Consulting Grp., Inc., 733 F. Supp. 2d 943, 945 (N.D. Ill. 2010).

5

1  **C.  The Government Has Made Efforts to Locate and Turn Over**
2  **Evidence Related to the 1990s Shareholder Loans**
   **Investigation**

3  After learning of Wiederhorn's earlier foray into using

4  shareholder loans as a means to avoid paying taxes, the government

5  sought to find and locate as much of the evidence related to this

6  prior case as possible.  To that end:

7  • The FBI requested the old case file from its archives and

8    produced its contents.  The case file contained

9    approximately 4,260 pages of scanned digitized documents,

10   including roughly 615 reports, approximately 89 of which

11   were reports of interviews.  The entire case file was

12   produced in discovery.  After defendants filed their

13   motion, the FBI located one additional report stating that

14   "worksheets depicting financial schedules [and] activity of

15   Wiederhorn" were destroyed in March 2006.  (Reidy Decl. Ex.

16   D.)

17  • IRS-CI requested a copy of the case file for Wiederhorn's

18    old case from the IRS-CI Seattle field office but the field

19    office had no records.  (Reidy Decl. Ex. E.)

20  • IRS-CI also contacted one of the case agents from the old

21    case who has since retired, Special Agent Craig Wyly, and

22    asked him to provide any documents related to the case.

23    All of the discoverable documents Agent Wyly provided,

24    including several memoranda of interview, were produced.

25    Out of an abundance of caution, IRS-CI is reviewing Agent

26    Wyly's emails and files to ensure that any other relevant

27    documents are located and produced.

28

- IRS-CI has also reviewed the emails and files of the other case agent for the old case who retired in 2018, Special Agent Julie Ward, to locate and produce any relevant documents.  Those of Agent Ward's emails with discoverable information will be produced.

- The government asked the United States Attorney's Office for the District of Oregon for any files in their possession related to their investigation and prosecution of Wiederhorn that resulted in his 2004 guilty plea.  In response, the US Attorney's Office provided the only file they had which contained administrative documentation related to post-conviction litigation regarding disclosure of grand jury materials.

- The government reached out to the Department of Justice Tax Division ("DOJ-TAX") who provided their file related to the 1990s shareholder loans investigation.  The government reviewed the file and produced discoverable information within it, including a presentation Wiederhorn's lawyers at the time made to the Tax Division asking that charges not be filed as well as DOJ Tax attorney's summary of that presentation.  (Reidy Decl. Ex. B.)  Other documents from the file, including the IRS-CI Special Agent Report seeking DOJ-TAX authorization of tax charges against Wiederhorn related to the shareholder loans, were not produced.  The Special Agent Report in DOJ-TAX's archive did not include any of the underlying documents (such as email messages) that were mentioned in the report as exhibits.

- The government has also reached out to the Criminal Division of the Department of Justice to determine which component of the Department may have been involved in consulting with Oregon AUSAs regarding the Wiederhorn disposition. The government recently obtained an email communication suggesting that, in December 2003, the Associate Deputy Attorney General directed the District of Oregon to consult with the Fraud Section of the Criminal Division regarding plea negotiations. (Reidy Decl. Ex. F.) The government has requested any records that may exist related to the consultation between the Oregon AUSAs and the Fraud Section related to Wiederhorn. Criminal Division records staff have begun searching for any physical or digital records related to the matter and any discoverable information found will be produced.

Despite these efforts, the government has not been able to locate the emails, financial records, and other underlying documents referenced in the produced reports related to the 1990s shareholder loans investigation.

**III. ARGUMENT**

    **A.    Legal Standard**

"There is no general constitutional right to discovery in a criminal case." <u>Weatherford v. Bursey</u>, 429 U.S. 545, 559 (1977); <u>see also</u> <u>United States v. Ruiz</u>, 536 U.S. 622, 629 (2002) ("[T]he Constitution does not require the prosecutor to share all useful information with the defendant."). And "there is, of course, no duty to provide defense counsel with unlimited discovery of everything

8

known by the prosecutor." United States v. Agurs, 427 U.S. 97, 106 (1976).  Neither Rule 16, nor Brady v. Maryland, 373 U.S. 83 (1963), nor Giglio v. United States, 405 U.S. 150 (1972), authorize fishing expeditions or sweeping discovery requests.  United States v. Bagley, 473 U.S. 667, 675 (1985).

### B.    Defendants Are Not Entitled to All Government "Notes or Internal Correspondence" Regarding Defense Attorney Presentations

This Court should not order the government to turn over all "notes or internal correspondence related to the three presentations" Wiederhorn's former counsel gave to various DOJ components because such materials contain opinion work product.[4]  "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney."  Hickman v. Taylor, 329 U.S. 495, 510 (1947).  The work product doctrine first pronounced in Hickman protects from disclosure "[a]ny opinion work product—meaning, the attorney's mental impressions, conclusions, opinions or legal theories."  United States v. Sanmina Corp., 968 F.3d 1107, 1125 (9th Cir. 2020).  Even though defendant Wiederhorn's prior criminal case ended more than 20 years ago, "[t]he work product privilege extends beyond the termination of litigation."  Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 731 (8th Cir. 2002).

Opinion work product includes "attorneys' assessment of the strength of such facts and evidence" involved in the case.  United States ex rel. Burroughs v. DeNardi Corp., 167 F.R.D. 680, 684 (S.D.

---

[4] The government has only located notes of Wiederhorn's attorney's statements during a presentation to DOJ-TAX and provided those notes to defendants.  (Reidy Decl. Ex. B.)  The government opposes disclosure of any other notes it may find on the grounds set forth here.

9

1    Cal. 1996).  Opinion work product also encompasses "opinions . . .

2    regarding . . . the existence and merit of certain of [d]efendants'

3    defenses."  Doe v. Society of Missionaries of Sacred Heart, 2014 WL

4    1715376, at *3 (N.D. Ill. May 1, 2014).  Here, the work product

5    doctrine unquestionably protects prosecutors' assessment of the

6    strength of their case or the viability of Wiederhorn's defenses

7    related to Wiederhorn's attorneys' presentations on the 1990s

8    shareholder loans.  To the extent any documents that are later found

9    reflect those mental impressions, the government will not provide

10   those documents pursuant to the work product doctrine.

11        Brady does not change the analysis.  "[A] prosecutor's opinions

12   and mental impressions of the case are not discoverable under Brady

13   unless they contain underlying exculpatory facts."  Lopez v. Ryan,

14   630 F.3d 1198, 1210 (9th Cir. 2011) (affirming rejection of Brady

15   claim based on note stating that "there was an insufficient factual

16   basis to support a conviction of Lopez for the assault"), overruled

17   on other grounds by McKinney v. Ryan, 813 F.3d 798 (9th Cir. 2015).

18   Consistent with Lopez, and based on the assumption that defendants

19   may not have access to the presentations, the government has already

20   turned over the only presentation-related internal memoranda it has

21   found that merely summarized Wiederhorn's former lawyers'

22   presentation to DOJ-Tax.  (Reidy Decl. Ex. B.)  But prosecutors'

23   assessments of the strength or weakness of Wiederhorn's counsel's

24   arguments, or the case against Wiederhorn generally, should remain

25   protected from disclosure as opinion work product.[5]

26   _____

27        [5] Defendant falsely states that "the Court agreed that the
     government must produce" all presentation-related notes.  (Dkt. 118-1

28                                                      *(footnote cont'd on next page)*

                                    10

1    Moreover, <u>Brady</u> does not require the government to provide

2    defendants with presentations by Wiederhorn's prior counsel to which

3    they already have access.  Defendant Wiederhorn references "three

4    presentations Mr. Wiederhorn's then-counsel gave" of which defense

5    counsel is already aware--"to the USAO, DOJ Tax, and DOJ Criminal

6    Division."  (Dkt. 118-1 at 13-14.)  <u>Brady</u> imposes a duty upon the

7    government to disclose only "information which had been known to the

8    prosecution but unknown to the defense."  <u>Agurs</u>, 427 U.S. at 103.

9    Put another way, "<u>Brady</u> does not require the government to turn over

10   exculpatory evidence if the defendant knew or should have known the

11   essential facts permitting him to take advantage of any exculpatory

12   evidence."  <u>United States v. Grossman</u>, 843 F.2d, 78, 85 (2d Cir.

13   1988).  Because defendants are already informed of the substance of

14   Wiederhorn's prior counsel's presentations to various DOJ components,

15   <u>Brady</u> does not require the government to re-provide them with the

16   same information in discovery.

17   **C.  Defendant Is Not Entitled to the IRS-CI Special Agent
         Report Regarding the 1990s Shareholder Loans**

18

19   Similarly, the Court should not order the government to turn

20   over the IRS-CI Special Agent Report from defendant's prior case

21   because it is protected from disclosure under Federal Rule of

22   Criminal Procedure 16.  Rule 16 "does not authorize the discovery or

23   inspection of reports, memoranda, or other internal government

24   documents made by an attorney for the government or other government

25   agent in connection with investigating or prosecuting the case."

26   _____
     at 13-14.)  In reality, the government expressly reserved the right
27   to withhold any presentation-related notes that contained protected
     work product and the Court did not order disclosure of such protected
28   information in ruling on defendant's prior motion to compel.

1  Fed. R. Crim. P. 16(a)(2); see also United States v. Armstrong, 517

2  U.S. 456, 463 (1996) ("[U]nder Rule 16(a)(2), [a defendant] may not

3  examine Government work product in connection with his case.").

4       Rule 16(a)(2) creates a privilege against disclosure for the

5  IRS-CI Special Agent report from discovery.  In United States v.

6  Mann, 61 F.3d 326 (5th Cir. 1995), the Fifth Circuit addressed Rule

7  16(a)(2)'s application to a "Special Agent's report prepared by . . .

8  the Internal Revenue Service" that "included assessments of the

9  strength of the case" and contained a lengthy "evidence or factual

10 section."  Id. at 328-29 (cleaned up).  Examining the language of

11 Rule 16(a)(2), the Fifth Circuit concluded that "[a]s an internal

12 government document produced by government agents in connection with

13 the investigation of this case, the reports at issue clearly fall

14 within the ambit of this rule, and thus are exempted from discovery."

15 Id. at 331.  The Fifth Circuit then reversed the district court's

16 order sanctioning the government for failing to turn over the Special

17 Agent Report.  Id. at 327.  The Ninth Circuit later relied on Mann's

18 reasoning to hold that "Rule 16(a)(2) extends to . . . witness

19 statements to be used in a federal criminal prosecution" as well as

20 "reports revealing the identities of the witnesses and summarizing

21 their statements" and reversing a district court's order of their

22 disclosure.  United States v. Fort, 472 F.3d 1106, 1120 (9th Cir.

23 2007).  The Ninth Circuit also held that Brady did not require

24 disclosure of the reports because it "pertains to inculpatory, not

25 exculpatory evidence."  Id. at 1110.  Taken together, Mann and Fort

26 demonstrate that the IRS-CI Special Agent's report presenting all of

27 the inculpatory evidence that supported charging defendant Wiederhorn

28

12

1  with various tax offenses is protected from disclosure under Rule

2  16(a)(2).

3      **D.  The Court Should Not Order Discovery of Any Destruction of
           Decades-Old Materials from Defendant's Prior Criminal Case**

4

5      Defendant wrongly contends that the government must provide

6  detailed information regarding the destruction of any documents from

7  the investigation of defendant's 20-year-old criminal case because

8  such destruction "could be grounds for dismissing the indictment

9  altogether" or a variety of other sanctions.  (Dkt. 118-1 at 16.)

10 But to warrant a much less severe sanction, an adverse inference

11 instruction, "a criminal defendant must establish that the evidence

12 was destroyed in bad faith."  United States v. Romo-Chavez, 681 F.3d

13 955, 961 (9th Cir. 2012) (cleaned up).  "[T]he bad faith requirement,

14 absent from the general civil standard, exists in criminal cases

15 because it limits the extent of the police's obligation to preserve

16 evidence to reasonable bounds and confines it to that class of cases

17 where the interests of justice most clearly require it."  Id.

18 (cleaned up).  At a minimum, a party seeking to show bad faith must

19 show "that the government was on notice that the records had

20 potential relevance to the litigation."  Akiona v. United States, 938

21 F.2d 158, 161 (9th Cir. 1991) (reversing adverse inference sanction

22 based on destruction of government documents related to disposition

23 of grenade where "almost twenty years passed between the time when it

24 was clear that the government possessed the grenade and the time when

25 the grenade was used to harm the plaintiffs").  Moreover, destruction

26 of documents that occurs pursuant to procedures "governing disposal

27 of inactive records" cannot support a bad faith finding.  Vick v.

28

13

1   Texas Employment Commission, 514 F.2d 734, 737 (5th Cir. 1975)

2   (rejecting request for adverse inference where records destroyed

3   "under routine procedures without bad faith and well in advance of

4   Vick's service of interrogatories").

5       There can be no plausible argument that the government engaged

6   in bad faith conduct by destroying any documents related to

7   defendant's prior criminal investigation.  Defendant's earlier case

8   was investigated during the early 2000s and concluded in a guilty

9   plea and sentence in 2004.  This investigation into Wiederhorn's most

10  recent shareholder-loan-related fraud did not begin until more than a

11  decade and a half later, in 2020.  Any destruction of documents that

12  occurred during this sixteen-year period (such as the FBI's March

13  2006 destruction of certain financial records (Reidy Decl. Ex. D))

14  could not possibly reflect bad faith because the government had no

15  way of knowing the relevance of Wiederhorn's prior case to his

16  current case before the current case had even started.  See Akiona,

17  938 F.2d at 161 ("Here, the plaintiffs have not shown any bad faith

18  in the destruction of the records, nor even that the government was

19  on notice that the records had potential relevance to litigation.").

20  Instead, the destruction of evidence following the conclusion of

21  defendant's prior case merely reflected the typical disposition of

22  the prosecution's evidence upon the end of a criminal case.  See

23  generally Smart v. County of Gloucester, 2024 WL 532092, at *6

24  (D.N.J. Feb. 8, 2024) ("At the conclusion of a case, a prosecutor

25  typically will either destroy the evidence or turn the evidence over

26  to the person or entity from whom the evidence was received.").

27  Moreover, given the two decades that have passed since the end of

28

14

defendant's case, the government would have difficulty ascertaining any details of destruction, much less the level of granular detail requested by defendant.  The Court should not order the government to provide a detailed accounting of obviously good faith document destruction, particularly in light of the age of defendant's prior case.

Defendant's cases are inapposite.  None of the authorities cited stand for the proposition that the disposition of records from a prior criminal case that had been closed over a decade before the current investigation constitute evidence of potential misconduct or of a poorly conducted investigation.  See United States v. Howell, 231 F.3d 615, 625 (9th Cir. 2000) (mistake in police reports regarding money had been collected from a defendant); United States v. Sager, 227 F.3d 1138, 1142-43 (9th Cir. 2000) (discrepancies between inspector's description of witness statement); United States v. Balwani, 2022 WL 1720081, at *2 (N.D. Cal. May 27, 2022) (purported failure to preserve company database that housed "patient test results and all quality control data" at center of fraud trial); United States v. Jefferson, 2025 WL 53338, at *6 (W.D. Wash. Jan. 8, 2025) (failure to investigate self-defense in assault by strangulation case).

E.    **Defendants' Request to Search for 1990s Shareholder Loans Discovery and Produce All Discoverable Material Is Moot**

Given that the government has already searched "the Oregon USAO, DOJ Tax, Main Justice, the IRS, and the FBI" for all discoverable information regarding defendant's prior case, has produced any discoverable information in its possession, and committed to

15

producing any discoverable information it finds in the future (particularly with regard to the outstanding requests to the Criminal Division), this Court should deny defendant's motion to compel as moot. See, e.g., United States v. Weigand, 482 F. Supp. 3d 224, 244 (S.D.N.Y. 2020) (denying as moot motion to compel materials that "the Government represents that is has produced" and would produce any additional responsive materials); United States v. Zemlyansky, 945 F. Supp. 2d 438, 484 (S.D.N.Y. 2013) (denying motion to compel Rule 16, Brady, and Giglio material where the government "represented that it will turn over any" such material before trial); United States v. Harold, 734 F. Supp. 3d 1102, 1121 (D. Or. 2024) (denying motions to compel discovery that government "represented that it has produced").

**F.    Defendants' Request for "Immediate" Production or Production within 14 Days of Court's Order Should Be Denied as Premature**

Defendants' request for an order of "immediate production of all outstanding 1990s Loans Discovery" or to produce such information "within 14 days of the Court's order" should be denied. (See Dkt. 118-1 at 12, 16.) "As a general rule, Brady and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." United States v. Coppa, 267 F.3d 132, 136, 146 (2d Cir. 2001) (granting mandamus to vacate order "to disclose all Brady and Giglio materials immediately upon request by a defendant"). "Brady merely requires the government to turn over the evidence in time for it to be of use at trial." United States v. Fernandez, 231 F.3d 1240, 1248 (9th Cir. 2000) (emphasis in original); see also United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is

insufficient to require its production in advance of trial.").
Because trial is set for six months from now, the government should
be afforded additional time to search for the materials requested by
defendants not already produced.

**IV.  CONCLUSION**

Defendants' motion to compel should be denied.